IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LARRY WAYNE HUTCHINS, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CORRECTIONAL MEDICAL )<br>SERVICES, INC., *et al.*, )<br>)<br>    Defendants. ) | <br><br><br><br><br>CIVIL ACT. NO.  2:04cv00529-MHT<br>              (WO) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

The plaintiff in this 42 U.S.C. § 1983 action is a prison inmate.  The defendants are either institutional or individual medical providers of medical care to inmates.  Hutchins contends that while he was incarcerated at Staton Correctional Facility, the defendants failed to provide "proper and adequate" medical care to him for a lower back injury.  Hutchins complains that from 1988 to the time he filed this lawsuit, he suffered "severe headaches, chronic back pains, and numbness in the left leg from the waist down."  He admits he received pain medication but contends that he was denied "reasonable requests for diagnostic tests to verify or eliminate any serious injury."  He further complains that he suffered years of pain and suffering as a consequence of the inadequate treatment which did not address his problems.  He accuses the defendants of opting for less expensive modes of treatment even thought they knew "a different level of care was required."  Hutchins further complains as follows:

>Defendants consciously and recklessly contributed to or has/had knowledge of Plaintiff's serious medical condition, and by acts of omissions has denied, delayed, or interferred (sic) with a neurological surgeons recommendation for surgery, based on an MRI in June 2003, causing Plaintiff to continue being in chronic severe pain and undo (sic) suffering in violation of the Eighth Amendment, which is deliberate indifference to a serious medical condition.

Finally, the plaintiff alleges that the defendants' use of inadequate but high doses of pain medications such as Motrin, Robaxin, Naproxyn and other medications for over 15 years has caused permanent injury to his kidneys. The plaintiff seeks compensatory and punitive damages and injunctive relief including an order that the defendants make arrangement for surgery for the plaintiff.

In response to the orders of the court, the defendants filed special reports and answers. The court then informed the plaintiff that the defendants' special reports may, at any time, be treated as motions for summary judgment, and the court explained to the plaintiff the proper manner in which to respond to motions for summary judgment. The plaintiff has filed his responses, and this case is now before the court for consideration of the defendants' motions for summary judgment which the court concludes are due to be granted.

## II.  THE APPLICABLE LAW

To prevail in a suit based on an Eighth Amendment claim about medical attention, a prisoner must show at a minimum that prison or medical officials have acted with deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). Because society does not expect that

prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994). Under this standard, a prison or medical official does not act with indifference by providing medical care that is different from that which a prison inmate desires. *See Hamm v. Dekalb County*, 774 F.2d 1567 (11th Cir. 1985).

> The "seriousness" of an inmate's medical needs also may be decided by reference to the effect of delay in treatment. . . .Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." . . . An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir.1994) (emphasis added). Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188-89 (11th Cir. 1994).

The plaintiff's medical records document long term treatment with pain medication

for his back pain. In addition to medication, prison doctors have instructed that he be placed in a bottom bunk and that he not be required to stand, sit or bend for prolonged periods of time. As reflected in the complaint, the genesis of this lawsuit occurred in 2003 when, in September of that year, the plaintiff was examined by Dr. Thomas W. Rigsby, a neurosurgeon in private practice. After examining Hutchins and reviewing an MRI which had been ordered by prison doctors, Dr. Rigsby concluded that Hutchins

> has multi level degenerative disk disease with spondylosis at L2-3, L3-4, L4-5. He has significant end plate reaction to the arthritis at L2-3. There is a small disk herniation of to the left side at L3-4 which does catch the passing nerve root. There is a significant far lateral spondylotic spur and foraminal spur at L4-5 causing severe foraminal stenosis.
>
> \* \* \* \*
>
> I have explained to the patient that he has multi level degenerative disk disease and his back pain may not be completely relieved with surgery. However, I would feel that the left leg pain is probably coming from L3-4 and L4-5 and have recommended that he have surgery at both levels. I have recommended a left L3-4 partial hemilaminectomy and left L4-5 partial hemilaminectomy and foraminotomy. I've explained the expected outcomes and the possible failures. Risks of the operation, including bleeding, infection, CSF leak, nerve root damage, paralysis, spinal instability, iliac artery injury, bowel injury and death were explained. He seems to understand all this and requests that I proceed. No guarantees have been made.

It is undisputed that this report did not reach Hutchins' prison medical records or any prison physician. Thus, there is no evidence that any defendant was aware that Dr. Rigsby had recommended surgery. Hutchins suggests otherwise, but his evidentiary submissions are insufficient to demonstrate the existence of a genuine issue of fact. First, Hutchins points to his own comment reported on a sick call request form. (Ex. H, doc. # 70). The nurse completing the form reported that Hutchins said, "I was supposed to have surgery on L2L3,

4

L4 & . . . [unreadable] I want to follow up on that." However, there is no evidence that any of the individuals named as defendants ever saw this form or knew about Hutchins' assertion. In a progress note dated January 20, 2004 (Ex. I, doc. # 70), an unidentified medical provider stated "PT has DJD L1-2, L2-3, L4-5 & has been on Naprosyn for 90 day period since 1/1/03 BUN/CR 33/20 9/22/03." Hutchins argues that this notation shows knowledge of the examination by Dr. Rigsby. The notation at best creates only the possibility that someone knew of the examination; however, the information recited in the note also could have been derived from the report of Hutchins' MRI. Moreover, Hutchins offers no proof about who wrote the note and certainly does not show that any of the named individual defendants knew about the note.

Next, Hutchins contends that his letter dated January 24, 2004, addressed to NAPHCARE shows that he notified the defendants about the surgery. Again, Hutchins fails to demonstrate that any person received this letter or realized any danger to Hutchins existed.[1] Finally, Hutchins relies on a written complaint which he made on February 21, 2004. (Ex. K, doc. # 70). Hutchins asserts this is "formal complaint." However, Hutchins again does not demonstrate to whom this complaint was made or nor does he demonstrate that any individual named defendant was aware of it.

After transfer in 2004 to another prison, Hutchins was examined by Dr. Voss, another neurosurgeon, who noted his disc disease but concluded that "he really has not had much in

---

[1] Arguably, the letter which is a request to settle this case is not admissible. *See* FED. R. EVID. 408.

5

the way of conservative therapy. I would like to start him out with an epidural steroid injection and ask that he bring his films back to the next appointment. I think further treatment with NSAIDS might be dangerous given his own description that he may have some kidney damage . . . "

The analytical standard which the court must apply in this case bears some repetition. To establish liability under § 1983 for inadequate medical treatment, a plaintiff must show that the failure to provide him medical care amounted to cruel and unusual punishment under the Eighth Amendment of the United States Constitution. To rise to this level, a defendant must show that his inadequate care arose from a "deliberate indifference[2] to [his] serious medical needs." *Estelle*, 429 U.S. at 104-05. Two subsidiary showings must be made to obtain relief: (1) that the prisoner had an objectively serious medical condition that, if left unattended, could cause serious harm, and (2) that the defendants' response was so poor that it constituted an unnecessary and wanton infliction of pain. *See Estelle*, 429 U.S. at 105-06. To establish deliberate indifference, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

While the conduct of the prison medical providers in this case is assuredly not laudable in any respect, the court is compelled to conclude that Hutchins' constitutional

---

[2] Deliberate indifference is medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

rights were not violated. Based on the totality of the evidence in this case, the court cannot find that any defendant knew of a risk of harm to Hutchins and ignored that risk. Dr. Sonnier's failure to follow up and find out about Dr. Rigsby's examination is at best mere negligence or malpractice; it is not deliberate indifference. Moreover, Dr. Rigsby's report does not demonstrate and the plaintiff offers no proof to show that failure to provide Hutchins with the surgery created a risk of harm to him. Indeed, the litany of risks from the surgery – bleeding, infection, CSF leak, nerve root damage, paralysis, spinal instability, iliac artery injury, bowel injury and death – show that the surgery itself created risks to Hutchins. The danger of those risks is underscored by Dr. Voss' conclusion that Hutchins should be treated conservatively in 2004. Prison medical personnel treated Hutchins; even if that treatment amounted to malpractice, it did not violate the Constitution.

Hutchins further contends that the defendants violated his Eight Amendment rights by the long term treatment of his pain with NSAIDs which caused damage to his kidneys. Virtually all medical treatment poses some risks and the mere fact that ameliorative processes create some harm is in itself insufficient to demonstrate deliberate indifference. More to the point, in this case the medical evidence shows that when prison doctors learned that Hutchins might have renal problems, they referred him to a specialist and ceased giving him certain medications. In March 2004, a nephrologist examined Hutchins and concluded that he had "[c]hronic renal failures secondary to hypertension,[3] long history, with possible hypertensive

---

[3] Hutchins does not complain about treatment for hypertension. His medical records show he receives medication to control that condition.

nephrosclerosis, also contributed to by his long term history of nonsteroidal antiinflamatory drug intake, Motrin and Naproxyn." The nephrologist developed a plan of treatment for Hutchins. Hutchins fails to demonstrate that any defendant was deliberately indifferent to a serious medical need by continuing to treat him with pain medication after recognizing a risk of harm to him.

Hutchins finally accuses the defendants of opting for less expensive modes of treatment even thought they knew "a different level of care was required." It is correct that in certain circumstances, deliberate indifference to serious medical needs can be shown by prison doctors taking an easier and less efficacious route. *Rogers v. Evans*, 792 F.2d 1052 (11th Cir. 1986). However, Hutchins' accusation fails because he offers no proof that the defendants knew that some different level of care was required. His mere assertion is insufficient to create a genuine issue of fact.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendants' motions for summary judgment be granted and that this case be dismissed with prejudice. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before July 24, 2006. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore,

it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 10th day of July, 2006.

      /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

9